Patterson *v.* The People.

[BROOME GENERAL TERM, July 10, 1866. *Parker, Mason, Balcom* and *Boardman,* Justices.]

———————

JAMES PATTERSON, *plaintiff in error, vs.* THE PEOPLE, *defendants in error.*

When prisoners are jointly indicted, and they elect to have separate trials, it has always been allowed to the district attorney to determine which of them he will first put upon his trial. It is purely a matter of discretion with him, and his discretion will not be interfered with by the court. And a refusal thus to interfere forms no ground of exception.

On the trial of a criminal case, the prisoner can not be examined as a witness for himself; nor can one jointly indicted with him be examined as a witness in his behalf.

The common law rule always excluded co-defendants from testifying for each other; and the relaxation of the rule, as to such parties, and in respect to the defendant himself, effected by section 399 of the Code, applies only to civil actions.

Every man must be held accountable for the consequences of his acts consciously and deliberately performed; unless he can show that he is in that condition which stamps him as an irresponsible being.

Patterson *v.* The People.

Accordingly *held* that an offer to show the mental grade and capacity of the prisoner, which offer was made not for the purpose of proving · him to be *non compos mentis*, but to show the measure of his intellectual capacity, was rightly rejected.

The provision of the Revised Statutes, relative to justifiable homicide, as justly interpreted in the case of *Shorter* v. *The People*, (2 *N. Y. Rep.* 193,) is that one who is without fault himself, when attacked by another, may kill his assailant, if the circumstances. be such as to furnish reasonable ground for apprehending a design to take his life, or to do him some great personal injury, and there is imminent danger that such design will be accomplished; and this is so although it may afterwards turn out that the appearances were false, and there was in fact no such design, and no danger of its accomplishment.

On a trial for murder, the jury were told that they were to find the prisoner guilty beyond a reasonable doubt; that the question for them to meet (the killing having been established beyond controversy,) was whether it was a justifiable homicide, and if they so found, their verdict must be one of acquittal. That if the prisoner had reason to believe that the deceased meant to take his life, or commit some great violence upon him, he had a right to resort to violence, and even to take life. That they were to inquire whether the circumstances, conduct and acts of the deceased were such as fairly and reasonably to induce such belief, and if they were, the prisoner was justified in acting upon those appearances, whether they were real or feigned. That the inquiry was, whether the jury were satisfied that the prisoner, when he fired the gun, had reason to believe, under the circumstances, then transpiring before him, that the deceased had a revolver and was going to shoot him. *Held* that the charge presented to the jury the rule which justifies the taking of human life in self defense, in the most favorable aspect for the prisoner, and gave him the fullest benefit of the rule prescribed by the statute as interpreted by the courts.

The judge was requested to charge that if the prisoner did really, and in good faith, apprehend such design and danger, as above stated, then the jury should acquit, though the fact turned out to be that the prisoner was mistaken, and that no such design, or danger, did in truth exist. The judge refused to charge, in the form requested—"that if the prisoner did really, and in good faith, apprehend," &c.; remarking that that turned entirely upon the operation of the prisoner's own mind, without regard to whether he had reason thus to believe. *Held* that the introduction or omission of the words objected to by the judge did not really vary the legal proposition which was clearly put in the charge and substantially repeated in the language of the judge in responding to the request; and that such refusal to charge was not a ground of error.

The judge was also requested to charge the jury that if they believed the prisoner was a private soldier, and saw his superior officer unlawfully resisted in the performance of his duty, and believed that he was ordered to fire, and did so in obedience to what he supposed a lawful command, then they should acquit. This was declined. *Held* that, there being no testimony going to establish

Patterson *v.* The People.

any such condition of things as would warrant such a command, even if the officer had power to give it; nor evidence to show that at the time the homicide was perpetrated the officer was being resisted in the performance of any duty; the proposition was a mere abstraction, unwarranted by any facts appearing on the trial; and the instruction was therefore properly refused.

Where a remark of a judge, in refusing to charge as requested, though erroneous, does no harm, because it was a mere abstraction, having nothing to do with the matter in hand, it will afford no ground for reversing the judgment, or granting a new trial.

The rule on this subject is the same in criminal as in civil cases.

Where, on a trial for murder, the killing is proved and conceded, and there is no doubt as to the identity of the prisoner, it is for him, in making out a justification for the act, to satisfy the jury, beyond reasonable doubt, that he did apprehend, and had reason to apprehend, that he was in imminent danger of his life, or of the infliction of some great personal injury.

It would be reversing the whole order of the trial, and the burden of the proof, if it devolved upon the people not only to prove the killing, but to negative any possible defense that the statute or common law affords to an alleged offender charged with crime. *Per* BACON, P. J.

The judge was requested to charge the jury that if they, upon the evidence, entertained a reasonable doubt as to whether or not the prisoner had reason to apprehend personal injury, they should acquit. The judge declined to put the proposition in that form, stating the rule to be that the jury were to be satisfied beyond a reasonable doubt, that the prisoner had reasonable ground to believe himself in danger. *Held* not erroneous.

WRIT of error to the court of oyer and terminer of Jefferson county. The prisoner, James Patterson, was indicted jointly with John Maher, Charles Dyer and Robert Underwood, for the murder of Alexander Neal, at Watertown, in Jefferson county, on the 6th day of December, 1864. Patterson, on being arraigned, pleaded not guilty, and demanded to be separately tried. On the trial the counsel for the prisoner, Patterson, asked the court to control the discretion of the district attorney, and direct him to move the trials of the prisoners Underwood and Dyer, first, and said that he would furnish the court with an affidavit, stating that Underwood and Dyer were included in the indictment without sufficient evidence to justify their being put upon trial, and that they were material and necessary witnesses for the defense of Patterson, and that without their testi-

mony he could not safely proceed to trial. This affidavit the counsel offered to prepare. The district attorney consented that for the purposes of the motion, the statement of what could be shown by affidavit, be taken with the same force and effect as an affidavit, and the court so ordered. The district attorney objected to the motion, and it was denied by the court, and the prisoner's counsel excepted. The facts proved on the trial sufficiently appear in the opinion of the court.

The prisoner's counsel offered to show that the prisoner was of a very low order of intellect, and very ignorant, which was excluded and an exception taken. He also proposed to call as witnesses, the three persons jointly indicted with the prisoner. They were excluded, and exception taken. The counsel also offered the prisoner as a witness in his own behalf, and he was excluded and an exception taken. The counsel offered to prove, by an officer in the regular army, that when a private, seeing his superior officer unlawfully resisted in the performance of his duty, is ordered by such officer to fire on the aggressor, it is, by military usage and discipline, made the duty of the private to obey the order. This was excluded and an exception taken.

The judge was requested to charge as follows:

First. If the jury believe that the prisoner had reasonable ground to apprehend a design on the part of Neal to do him some great injury, and that there was imminent danger of such design being accomplished, then their duty is to find the prisoner not guilty. The judge so charged.

Second. If the prisoner did really, and in good faith, apprehend such design and danger, as above stated, then the jury should acquit, though the fact turned out to be that the prisoner was mistaken, and that no such design, or danger, did in truth exist. The judge said:

"I can not charge that, in the phraseology in which it is given here: 'That if the prisoner did really, and in good faith, apprehend;' that turns entirely upon the operation

of his own mind, without any regard to whether he had reason thus to believe." Exception to the refusal to charge as requested.

Third. If the jury believe the defendant was a private soldier, and saw his superior officer unlawfully resisted in the performance of his duty, and believed that he was ordered to fire, and did so in obedience to what he supposed a lawful command, then they should acquit. The judge said:

"I can not so charge you. No order of a superior officer to shoot a man down, off the field of battle, can justify him."

Mr. Starbuck. An exception to the refusal to so charge. I want an exception to the remark of your Honor, that "no order of a superior officer could justify a soldier in shooting down a citizen except it be on the battle field."

Fourth. If the defendant believed he heard it stated that Neal "had a revolver, and was going to shoot;" or believed that he was ordered to shoot, that fact may be taken into account by the jury in determining whether he had reason to apprehend, or did in fact apprehend, such design and danger as aforesaid. The judge so charged, stating, "I think that the fact of the cry of the revolver, in connection with the other facts and circumstances of the case, the prisoner had the right to take into account, in passing upon the question whether there was probable cause to believe that his life was in danger."

Mr. Starbuck. I ask your Honor to charge that, if upon the evidence the jury entertain a reasonable doubt as to whether or not the prisoner had reason to apprehend personal injury, then they should acquit.

Court. I can not so charge. If you find that he had reasonable cause to believe himself in danger, not that you have a doubt it.

Mr. Starbuck. Your Honor does not understand me. The proposition is, that to convict they must find, beyond a reasonable doubt, that he had not ground to apprehend danger, &c.

Court. You are to find, beyond a reasonable doubt, that he had reasonable cause to believe that his life was in danger.

Mr. Starbuck. To that I except. I feel quite sure that your Honor fell into an unintentional error. The remark to this jury which I excepted to was, that their duty was to find, beyond a reasonable doubt, that he had cause to apprehend, &c.

Court. I did not mean that, if that was the phraseology.

Mr. Starbuck. I take it to be the other way, that if the jury have a reasonable doubt upon the question of whether he in good faith, upon appearances, did apprehend, and whether he had reason to think the cause was sufficient, then it is followed by an acquital.

The judge refused so to charge, and an exception was taken.

*J. F. Starbuck,* for the plaintiff in error. I. The refusal to control the discretion of the district attorney, as to the order of trial, was error.

II. The exclusion of proof of the prisoner's mental capacity and ignorance was error.

III. The exclusion of the prisoner and his acsociates as witnesses was error. (*Code of Procedure,* § 399, *as amended* 1865. *Id.* § 399, *as amended* 1866.)

IV. The rejection of proof offered as to the duty of a private soldier to obey his superior officer was error.

V. The court erred in refusing to charge that the jury should acquit, if they found the prisoner did really, and in good faith, apprehend that his life was in danger. (*Shorter* v. *The People,* 2 *Comst.* 193.)

VI. Both the refusal to charge, and the charge as to the duty of a private soldier to obey his superior officer, were erroneous. The charge had a tendency greatly to mislead the jury.

VII. The charge on the subject of reasonable doubt as to whether the prisoner had reason to think his life was in

danger, was clearly erroneous. (*The People* v. *McCann,* 16 *N. Y. Rep.* 58.)

*S. H. Hammond,* for the defendants in error. I. The ruling of the court refusing to control the discretion of the district attorney as to the order of trial was correct. 1. The court will not interfere to control the action of the district attorney, as to which of several prisoners, jointly indicted, shall be first tried. 2. If the court has the power to do so, its exercise is a matter of discretion, to which an exception will not lie. 3. The court will not go back of the indictment to inquire whether it is founded on sufficient evidence or not. It is the province of the grand jury to determine that fact.

II. The offer of the defendants' counsel, of the persons jointly indicted with the prisoner, as witnesses in his behalf, and of the prisoner as a witness in his own behalf, was properly overruled. 1. The common law rule is, that persons jointly indicted can not be witnesses for or against each other. 2. This rule has not been changed by the Code or by the recent statutes. These relate only to civil actions.

III. The ruling of the court, excluding proof as to what was the military duty where a private seeing his company being resisted, understood his superior officer to order him to fire, was correct. 1. The proposition assumes that the witness, instead of the court and jury, shall determine alike the law and the facts, 1st, whether a private soldier seeing his superior officer resisted, and is ordered to shoot a citizen, it is his duty to do so; and 2d, whether the degree of force, in this case, was sufficient to justify obeying the order to fire. 2. The law will be decided by the court, and the facts determined by the jury. 3. The answer would only be the opinion of the witness, and therefore not evidence.

IV. The second proposition submitted by the prisoner's counsel, in relation to the charge of the judge, was properly disposed of. 1. The true rule on the subject had already been charged by the judge, in answer to the *first* proposition.

Patterson *v.* The People.

(*Shorter* v. *The People,* 2 *Comst.* 193, 197.) 2. The pris-
oner must not only "really and in good faith apprehend such
danger and design," but he must have *reasonable cause for
such apprehension.* (*Shorter* v. *The People,* 2 *Comst.* 201,
*per Bronson, J.*) 3. Before taking the life of a man, he
must see that the appearances are such as indicate imminent
peril of his life, or some great bodily injury.

V. The *third* proposition, was properly disposed of. 1. The
proposition is in itself a mere abstraction, having no reference
to the facts in this case. (*Same case,* 202.) 2. It is holding the
life of a citizen at altogether too cheap a rate, to allow of his
being shot down by the order of a subordinate officer. 3. The
remark of the judge, though not necessary to the decision
of the question, is undoubtedly in accordance with the law.
If it lacks in any thing, it is by conceding too much power
to an officer, even on the field of battle.

VI. The last exception is not well taken. 1. The ques-
tion as to whether the prisoner was assailed or threatened in a
manner to endanger his life, is a matter of defense. The
killing was clearly proved. It was for him to satisfy the
jury that he did apprehend, and had cause to apprehend,
that he was in imminent danger of his life, or of some great
bodily injury. 2. The law had already been correctly and
clearly charged by the court on the subject, and it was for
the jury to be satisfied that the prisoner had brought himself
clearly within the protection of the rule. (2 *Comst.* 202.)
3. But the proposition itself was a mere abstraction, having
no reference to the facts of the case. There is no pretense
that the murdered man had a revolver, or that he was armed
in any way, or that he was in the attitude of attack upon the
prisoner, or had threatened to attack him.

*By the Court,* BACON, J. It can not be necessary to
expend any time upon the first three points made by the
counsel for the plaintiff in error, grounded upon the excep-
tions therein referred to. When prisoners are jointly indicted,

and they elect to have separate trials, it has always been allowed to the district attorney to determine which of them he will first put upon his trial. It is purely a matter of dis- cretion with him; and as he is by far the most competent, from his familiarity with the facts expected to be proved, to judge in this matter, his discretion will not be interfered with by the court, and a refusal thus to interfere forms no ground of exception.

The offer of the defendant as a witness for himself, and that of the party jointly indicted with him as a witness in his behalf, was properly overruled. The common law rule always excluded co-defendants from testifying for each other, and the relaxation of the rule as to such parties, and in respect to the defendant himself, effected by the 399th section of the Code, the Court of Appeals has explicitly decided applies only to civil actions. (*Williams* v. *The People*, 33 *N. Y. Rep.* 688.)

The offer to show the mental grade and capacity of the prisoner was rightly rejected. The offer was, in the words of the counsel, not for the purpose of proving him to be *non compos mentis*, but the measure of his intellectual capacity. The law recognizes no standard of unaccountability less than that which the offer disclaimed any attempt to establish. If a low order of intellect, and great ignorance, arising either from slowness of apprehension or a neglected education, are to excuse a homicide, we shall have a rule which will give far greater impunity to crime than it now possesses. Every man must be held accountable for the consequences of his acts, consciously and deliberately performed, unless he can show that he is in that condition which stamps him as an irrespon- sible being; and the proof indicated in the offer made no approach to this.

We come now to the exceptions founded upon the charge, and refusals to charge, which, as it seems to me, are the only matters worthy of serious consideration. In order to a clearer apprehension of the matters charged and declined by the

justice who presided on the trial, it may be well to recall the leading facts which the testimony, as a whole, may be said to have fairly established.  Prior to the commission of the homicide, and before the appearance of the prisoner at all upon the scene of action, a general affray had been in progress in the saloon of the Woodruff House, in which citizens and soldiers had been indiscriminately engaged.  Perhaps it is not important to ascertain who was most blameworthy, either for its commencement or continuance, although the weight of evidence seems clearly to establish that the soldier who is called throughout the trial "the corporal," was the first to address rude and taunting words tending to induce a conflict, to a party on whose behalf Neal, the deceased, interposed and gave the first blow.  Subsequently to this, other parties became implicated, and a general melee took place, in the course of which the sergeant received rough handling, and some personal injury.  But all the witnesses who speak on that subject, I think without exception, concur in stating that this part of the affray was substantially over, so that when Patterson appeared upon the scene it was; as the witness Arbuthnot states, "after the fight was stopped," when there was no quarrel or row, and it seemed, as he expressed it, to be "perfectly peaceful."  Speaking of the occurrences at this point of time, the witness Downs who was introduced on behalf of the prisoner, and who gives perhaps as intelligent an account of the transaction as any witness sworn on the trial, says that it might have been three minutes after the sergeant was struck before the gun was fired; that at that time he saw no quarreling or scuffling, and that the fight appeared to be over.

In regard to the immediate or apparent occasion for the discharge of the gun, there is some discrepancy in the testimony.  Some of the witnesses testify that as Patterson and another soldier, armed with the gun, came in at the door of the saloon, Neal, the deceased, had started towards the upper door of the saloon, with a tumbler in his hand

which he had taken from the bar, when Patterson asked, "where are the sons of bitches," and the sergeant thereupon pointed towards Neal, and said "there they are; shoot them." Others testify that the expression used by the sergeant was, "he has got a revolver, and is going to shoot." Thereupon Patterson drew his gun to the shoulder, and pointing in the direction of Neal, discharged it with fatal effect, the ball passing through his body and inflicting a wound from which he died in a few minutes. In regard to the manner of the discharge, one of the witnesses not engaged in the affray, but a spectator of the scene, describes Patterson as taking aim at Neal on the right of a post he was passing on his way out, and then moving his gun so as to bring the aim to the left of the post, and discharging it as soon as Neal had passed the post, and came again within range. The case then presents itself as one of the deliberate shooting of a human being by a party not in hot blood, who had not been in any manner implicated in the affray, who had not been personally assaulted, or put in any jeopardy, and who only by the wildest stretch of imagination could have deemed himself to be in any bodily danger, and who would seem to have performed the act under some blind impulse, or in subserviency to some supposed authority urging him to the deed.

Such is the aspect in which the case presents itself to me, after a careful perusal of the whole testimony as it is spread out at length in the return to the writ of error; and thus viewing it, it is to my mind quite questionable whether the court was called upon to charge in any respect as demanded by the counsel for the prisoner. The provision of the Revised Statutes, as justly interpreted in the case of *Shorter* v. *The People*, (2 *Comst.* 193,) is that one who is without fault himself, when attacked by another, may kill his assailant, if the circumstances be such as to furnish reasonable ground for apprehending a design to take his life, or to do him some great personal injury, and there is imminent danger that such design will be accomplished; and this is so although it may

afterwards turn out that the appearances were false, and there was in fact no such design, and no danger of its accomplishment. The judge, on the trial of Shorter, had repudiated this last qualification, and charged that the jury must be satisfied that there was in fact imminent danger that some great personal injury would be inflicted on the prisoner. This charge the Court of Appeals held to be wrong; but a new trial was not granted, for the reason that the facts of the case did not call for any charge upon the subject of what would be excusable or justifiable homicide, and although there was error in the ruling, it was one which, not being warranted by the facts of the case, could not effect any legal injury.

I seriously question, therefore, whether it would have been error in the judge, on this trial, if he had declined giving any instructions to the jury in respect to the rule which justifies the taking of human life in self-defense. But it is not necessary to put the case upon this ground, since the charge did present it to the jury in the most favorable aspect for the prisoner, and gave him the fullest benefit of the rule prescribed by the statute as interpreted by the courts. The charge is given at length, in the case, and covers, as it seems to me, every point but one, called for by the special instructions of the prisoner's counsel. The jury were told that they were to find the prisoner guilty beyond a reasonable doubt; that the question for them to meet (the killing having been established beyond controversy,) was whether it was a justifiable homicide, and if they so found, their verdict must be one of acquittal. The statute was then cited, and the jury were instructed in view of it, as to what were the elements of justifiable homicide. After recapitulating the leading facts, the jury were told that if the prisoner had reason to believe that the deceased meant to take his life, or commit some great violence upon him, he had a right to resort to violence, and even to take life. They were further instructed to inquire whether the circumstances, conduct and acts of the

deceased were such as fairly and reasonably to induce such belief, and if they were, the prisoner was justified in acting upon those appearances, whether they were real or feigned. "The inqury is whether you are satisfied that the prisoner, when he fired the gun, had reason to believe, under the circumstances then transpiring before him, that Neal had a revolver and was going to shoot him." A charge more entirely unexceptionable and lenient towards the prisoner, it would be difficult to make; but the counsel for the defense, not content with this, proceeded to propound several distinct propositions upon which the court was asked to charge. Two of them the judge charged as requested, and two were declined, as I think, with entire propriety. The first was in the very words of the statute, and was so charged. The second introduced the element of impunity given to the prisoner from circumstances threatening danger, although it turned out that they were not real, and the prisoner was mistaken in his apprehension of them; but the counsel insisted on a qualification which, as the judge remarked, turned upon the operation of the prisoner's own mind, without any regard to whether he had reason thus to believe. Whether there is any thing in this metaphysical distinction, or not, is in my judgment not important; and the introduction or omission of the words, "if the prisoner did really and in good faith" apprehend danger, did not really vary the legal proposition which was clearly put in the charge and substantially repeated in the language of the judge in responding to this request. All he objected to was the introduction of those words which added nothing to the proposition which was fairly given to the jury, that if the prisoner had reason to apprehend danger, although there was no real danger, and no design to inflict an injury, and he was entirely mistaken in his apprehension of such design, the jury should acquit.

The third proposition turned upon the supposed impunity of the prisoner, arising from the alleged fact that he saw his superior officer unlawfully resisted in the performance of

his duty, and believed that he was ordered to fire, and did so in obedience to what he supposed a lawful command. This was declined, and properly so, because there was no state of facts proved on the trial, upon the testimony of any witness, going to establish any such condition of things as would warrant such a command, even if the officer had power to give it. There is no evidence, anywhere, to show that at the time the homicide was perpetrated, the officer was being unlawfully resisted, or resisted at all in the performance of any duty whatever. The whole case shows that the fight was substantially at an end, comparative quiet reigned, and no one was resisted; and upon the evidence on the part of the defense, no command whatever was given to the prisoner to shoot. The proposition was a mere abstraction, unwarranted by any facts appearing on the trial. The remark of the judge which accompanied his refusal to charge as requested, may not have been strictly correct. Cases can be conceived where an order of an officer to shoot down a man, though not on the field of battle, may be justified, but they do not come within drum beat of the facts existing here; and the remark, if erroneous, did no harm, because it was a mere abstraction, having nothing to do with the matter in hand, and therefore, within a well established principle, affording no ground for reversing a judgment, or granting a new trial. The rule on this subject, it is hardly necessary to add, is the same in criminal as in civil cases.

The next proposition was charged precisely as requested by the counsel for the prisoner, and gave to him the benefit of every fact and circumstance from which the jury could be authorized to arrive at the conclusion that he had any reason to apprehend, or did in fact apprehend, any design on the part of the deceased to put the life of the prisoner in danger, or to inflict upon him any great personal injury.

The final request to charge was, that if the jury, upon the evidence, entertained a reasonable doubt as to whether or not the prisoner had reason to apprehend personal injury,

Patterson *v*. The People.

they should acquit.   This was repeated with some variations not changing the sense; the court declining to put the proposition in this form, but stating the rule to be that the jury were to be satisfied beyond a reasonable doubt, that the prisoner had reasonable ground to believe himself in danger. Upon the general question of the defendant's guilt the rule is, that any reasonable doubt is to be resolved in his favor, and that rule had been stated to the jury in the charge; but the request here was to instruct the jury to allow a doubt in their minds, if such should be the fact, as to the state of the prisoner's mind, to acquit him wholly of the crime with which he stood charged; in other words, if they doubted whether he stood in fear of his life, or his person, they should conclude that he did stand in such fear, and acquit him.   No such charge as this in a capital case was ever given, according to any authority that I have yet seen, or any practice sanctioned by the courts.   It constitutes no part of the definition of the crime of murder that it must be committed by one who had no reasonable fear of a felony, or of great personal injury.   That forms a ground of justification, if the fact be that such reasonable ground of apprehension exists, and is for the party charged with the crime to assert and maintain. The killing in this case was proved and conceded, and there was no doubt as to the identity of the prisoner.   It was for him to satisfy the jury, beyond reasonable doubt, that he did apprehend, and had reason to apprehend, that he was in imminent danger of his life, or of the infliction of some great personal injury.   It would be reversing the whole order of the trial and the burden of proof, if it devolved upon the people not only to prove the killing, but to negative any possible defense that the statute or common law affords to an alleged offender charged with crime.

We have been referred to the case of the *The People* v. *McCann*, (16 *N. Y. Rep.* 58,) as an authority for the proposition put forth by the counsel for the prisoner, and which

he requested the court in this case to charge. As I under-stand that decision, it sustains no such doctrine. The defense in that case was insanity; and the judge on the trial had ruled that sanity being the normal condition, insanity was not to be presumed, but must be proved, and the jury must be satisfied of the existence of insanity, beyond a reasonable doubt, or otherwise must convict. The Court of Appeals disapproved this ruling, and held that the prisoner was enti-tled to the benefit of any doubt resting on the question of sanity. I confess I do not very clearly apprehend, nor quite appreciate, the course of the reasoning by which this con-clusion is reached; and it is opposed to several cases cited in the opinions, and is upheld by no authority directly on the point. In the well considered case of *Commonwealth* v. *Rogers*, (7 *Metc.* 500,) Ch. J. Shaw laid down the rule that a person is of sound mind until the contrary appears; and in order to shield a party from criminal responsibility, the pre-sumption must be rebutted by proof sufficient to establish the fact of insanity to the satisfaction of the jury. On an inquiry subsequently put by the jury, whether they must be satisfied beyond a doubt of the insanity of the prisoner, the chief justice repeated this instruction, and added that if the preponderance of the evidence was in favor of the insanity of the prisoner, the jury would be authorized thus to find. The propriety of this instruction is sanctioned by the case of *Walter* v. *The People*, (32 *N. Y. Rep.* 147,) where the court say that sanity is the presumed normal condition of the human mind, and it is never incumbent upon the prose-cution to give affirmative evidence of the existence of such state, in a particular case. I know not how to reconcile the doctrine put forth in the case of McCann with this deci-sion, and if in conflict on this point, this, as being the latest utterance of the court, must prevail.

But, assenting to the authority of *The People* v. *McCann*, it does not support the proposition of the prisoner's counsel

---

Patterson *v.* The People.

here, for the reason that the court holds that to establish sanity is a part of the case which the prosecution is to maintain. The common law definition of murder, to wit: that it must be perpetrated by a person of "sound memory and discrimination," is cited and held to be still applicable to the definition of the crime, and that this must be proved to the satisfaction of the jury, as much as any part of the case. It is said plausibly, if not forcibly, that if a man is without reason at the time, the act is not his, and he is no more responsible than he would be for the act of another man; and that the defense of insanity, so far from confessing and seeking to avoid the alleged crime, denies the existence of any capacity to incur guilt and commit crime. This is the ground on which the opinion of the court places the defense of insanity. It need hardly be said that viewing it in this light, it has no analogy to the position of a party like the prisoner in this case, who had the capacity to commit the alleged crime, by whom it was confessedly perpetrated, and who can only escape the consequences by showing to the satisfaction of the jury, beyond a reasonable doubt, a state of facts that furnishes a justification of the act, or mitigates it to some lower degree in the scale of crime. The instruction of the judge, therefore, seems to me entirely proper, and the conviction and judgment should, in my opinion, be affirmed.

[ONONDAGA GENERAL TERM, October 2, 1866. *Bacon, Foster* and *Mullin,* Justices.]