CHARLES W. BABCOCK, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Indictment for false representation—prosecution must show falsity of — Upon total failure of proof, conviction reversed—Right of defendants to separate trials—When physician excused from testifying—When party may deny fraudulent intent.*

The defendant was indicted and committed for conspiring to obtain, by false and fraudulent pretences, a promissory note for $50 from one Haskell, the representations being that one Jennie McKee was with child by him, and that if he did not give the note, she would charge him as its father.

*Held,* that it rested upon the prosecution to prove that each of the representations were false, and that it was not incumbent upon the defendant to prove their truth.

When the public prosecutor fails to prove some fact, on the trial, that is necessary to be proved in order to justify a conviction, his omission so to do must be then pointed out, and if it is not, it cannot be subsequently taken advantage of on appeal; but where there is in fact no legal proof of the offense charged in the indictment, it is the duty of the court to direct a verdict in favor of the accused, and if it fail to direct such verdict, it is the duty of the appellate court to reverse the judgment, even though the point was not raised upon the trial.

Where two or more defendants are jointly indicted for a felony, either one is absolutely entitled to a separate trial if he demands it.

Where, after a jury has been impanneled and a witness sworn, one of the defendants is ordered to be tried separately, the jury and witness must be re-sworn.

To excuse a physician from testifying, under 2 Revised Statutes, 406, section 73, it must appear that the information was acquired while he was being consulted professionally to obtain medical assistance.

Where a fraudulent intent is imputed to a person, or forms an element of a crime with which he is charged, he may deny the fraudulent intent, whether the effect is to defeat the action or to diminish the damage or punishment.

CERTIORARI to the Court of Sessions of the county of Allegany to review the proceedings on the trial of the relator, upon an indictment for a conspiracy to obtain, by false and fraudulent representations, from one Dwight W. Haskell a promissory note, dated the 25th day of March, 1875, for the sum of $50, payable at four months. The representations alleged were, that one Jennie McKee was with child by said Haskell, and that unless the note was given she would charge the paternity of the child on him.

The relator was indicted jointly with Hiram P. Merville, but after the jury was impannelled, Merville's counsel moved that he be tried separately; the motion was granted and relator's counsel excepted. The trial of the relator proceeded, and the people gave evidence tending to prove that a young girl, by the name of Jennie McKee, resided in the family of the defendant Babcock, in Centreville, in the county of Allegany, about the 22d of March, 1875. On that day Babcock went to Haskell's house and requested him to call at Babcock's house. The next day Haskell called and was taken by Babcock through the house to the barn, and was then told that Jennie said she was in the family-way, and that he was the cause of it. Haskell told Babcock he did not believe she would say so to him, and proposed to talk with the girl in the presence of Babcock and his wife.

Some effort was made to induce the girl to have an interview with Haskell on that occasion, but without success, Babcock saying she would not see him. Haskell then went out of doors, and Babcock said to him I guess it is you; have you promised Jennie you would fill her teeth if she would go to bed with you? Afterward Babcock went to Haskell's, and handed him two dollars to pay for the teeth. Babcock advised Haskell to go and see Dr. Merville as soon as he could. In the evening of the 24th of March, Merville and Haskell went to Babcock's. Haskell proposed to see Jennie, and she came where they were and accused Haskell of being at Babcock's the 20th of February, and having connection with her. Haskell then said to Babcock, if she agreed to go to bed with him, why did she send him the dollar and a-half? She said she did not; that Babcock had paid the twelve shillings. Babcock said he paid it of his own accord; that he

got the money out of her pocket, and she did not know it. In the barn Babcock told Haskell that if he did not attend to it, she was going to swear the child on him, and she would be believed before he would. The same night Babcock went to Haskell's house, after he had gone to bed, and got him up.

Babcock said the doctor (Merville) was going home, and wanted to know if Haskell wanted to see him. He told him he guessed not. Babcock said : " You send up $50, and you shall not have any further trouble." Haskell said he had no $50 to send up. Next day he went to Babcock's, where Merville was, and was by him invited to go out with him, and they went to the barn and had a conversation. He testified that while in the barn, Merville said to him, " I suppose you know what Babcock was down for the night before, and wanted to know if I would not give him a due-bill for the money." He said he did not want to do any such thing, and would not. Then Merville drew a note, and Haskell signed it, and was not to have any trouble about the Jennie McKee matter. The doctor said so. The note was payable to Merville ; Merville wanted the $50 to clear Haskell.

Dr. O. P. Crane was examined on the part of the people, and testified that he practiced medicine, and that Babcock came to him for medicine. Babcock's counsel objected, on the ground that the conversation was a confidential one, and incompetent and immaterial. The objections were overruled, and Babcock's counsel excepted.

The witness then testified that about last of January or first of February, Babcock came to his office and asked him if he had something good for a lady that had taken cold. Understood him to say Jennie had taken cold by mopping and getting her feet wet. He said it was suppressed menses, and he wanted something to bring her around. He let him have the medicine. Babcock brought the medicine back, and said it was for his wife, and was not given because she was in the family-way. It was brought back inside of a month, and before he heard the charge against Haskell.

Dr. Boddy testified that he was a practicing physician, and knew Babcock ; that he concealed himself at Babcock's barn, and overheard the conversation at Babcock's barn between Merville and Babcock. It was in the evening, between ten and twelve

o'clock of the sixth or seventh of April, and after the scandal was out. Merville said to Babcock: "Do you suppose there is any chance for them to get a hook on me in this matter?" Merville said if there was, he was afraid he should get into trouble. He told Babcock to take Jennie to Smith's Hotel, and he would meet him there, and it would be all right, and when Babcock got back they would have Haskell arrested for rape. Babcock said, we will get this note in the hands of a banker for collection. Babcock then told Merville that he had had connection with the girl, but had not got her in the family-way.

When the people rested, the district attorney, with the consent of the court, reserved the right to examine two witnesses named by him when they should come into court. This was objected to by Babcock's counsel, and the objection was overruled.

On the examination of Babcock in his own behalf, he testified that Merville told him that Haskell had left word to be sent for if he (Merville) concluded to go home that night. Babcock's counsel then offered to show all that was said by Merville to Babcock on the subject of going to Haskell's. The district attorney objected to the evidence, and it was excluded, and Babcock's counsel excepted.

Babcock's counsel asked Babcock the following question: "Did you state anything to Haskell that you knew or believed to be false up to the 24th March?" The district attorney objected; the objection was sustained, and Babcock's counsel excepted. Babcock further testified that he had a conversation with Merville on the 8th April, in the night. Merville wanted to know what was to be done about the Association matter; he said that the money he had got to pay for the music must be paid, and that Babcock told him he had a note payable to his father; that he could indorse and put in bank, and get the money. Babcock produced the note he had spoken of to Merville, and was asked to read it. Babcock's counsel said it was offered to identify the conversation in the barn, and as corroborative of his side of the case. The district attorney objected, the objection was sustained, and Babcock's counsel excepted. Babcock's counsel called Merville as a witness, and he was objected to on the ground that, being jointly indicted with Babcock, he was not a

competent witness. The objection was sustained, and Babcock's counsel excepted. Babcock's counsel asked the court to charge the jury that if Babcock believed in good faith that this girl was pregnant by the fault of Haskell, whether he was in error or not, he is entitled to an acquital. If he believed it was so, whether the fact was so or not, he cannot be convicted unless he acted on a known falsehood. The court said, in reply, that is so unless — and there is this other fact that the machinery of nature had been put in motion prior to the time this note was given. Babcock's counsel then asked the court to charge that there was no evidence of any attempt to commit an abortion on the girl. The court replied: "I do not understand that it is a crime to dislodge a fœtus four weeks old. Babcock's counsel excepted to the remark made by the court, and the court then said: "I will take it back then." Babcock's counsel then said: We except to your honor saying that, and also to your taking it back. The jury then retired, and after deliberation brought in a verdict of guilty.

Sentence was suspended, and a *certiorari* allowed and served.

*Geo. W. Daggett*, for the plaintiff in error.

*C. N. Flenagin* (District Attorney), for the defendant in error.

MULLIN, P. J.:

The indictment charges that the defendants named in it did unlawfully conspire, etc., by divers false pretenses, etc., to obtain from Haskell his promissory note for $50; and in pursuance of such unlawful combination, Babcock, one of said defendants, did falsely, etc., pretend to Haskell that one Jennie McKee was in the family-way, and that she was about to disclose and make public the fact, and to charge the paternity of the child upon him, and if he would pay to Babcock or Merville the sum of $50, or give him or them his note for that amount, Merville would immediately procure the miscarriage of Jennie, and that, would end the whole trouble, and keep the story as to the paternity of the child from the public; and, by means of these false pretenses, they pro-

cured the note of said Haskell, and the indictment proceeds to aver that in truth and in fact Jennie was not in the family-way, nor was she about to disclose and make public the paternity of said child, and charge it on said Haskell.

It was incumbent on the public prosecutor to prove some one, or all of these representations and their falsity, in order to convict the defendants or either of them.

The indictment alleges the falsity of but two of the representations, to wit: That Jennie was not in the family-way; and was not about to charge Haskell with the paternity of the child; and the prosecutor is bound to prove the representations alleged to be false, and he is confined to the representations so alleged to be false. (*The People* v. *Stone*, 9 Wend., 182, 191.)

It is not proved that she was not with child. She alleged that she was, and because it does not appear that a child was born, it does not follow that she was not with child when the representation was made.

Again, it is not proved that she was not about to charge upon Haskell the paternity of the child. It was not for the defendant to prove the truth of the representations. It was incumbent on the public prosecutor to disprove them, and unless he did the defendant was entitled to an acquittal.

No objection was made on the trial that the prosecution had failed to prove the offense as charged in the indictment; but when there is total failure to prove the offense, the omission of the counsel of the accused to call the attention of the court and the public prosecutor to it, does not deprive the accused of the right to raise the objection in any stage of the case, and demand an acquittal. It would be a gross outrage upon the rights of a person accused of crime to convict and punish him for an offense that it had not been proved he had committed, because his counsel had negligently omitted to insist upon the trial that the offense charged was not proved.

When the public prosecutor fails to prove some fact on the trial that is necessary to be proved, in order to justify a conviction, the prisoner's counsel must call the attention of the court and counsel to the omission; and if he does not, and conviction follows, the prisoner cannot afterward insist upon the defect of

proof as a ground for reversing the judgment. But when there is in fact no legal proof of the offense charged in the indictment, it is the duty of the court to direct a verdict in favor of the accused, or upon appeal to reverse the judgment.

In this case, if my view of it is correct, there is an entire defect of proof, and a new trial should be granted; but as this point has not been discussed by the counsel, a reargument must be ordered, unless error is found in some of the rulings of the court, and a new trial shall be ordered for such error.

After the jury was impanneled to try both defendants, and a witness was sworn, the counsel for the defendant Merville moved that defendant Merville be tried separately; the counsel of defendant Babcock objected; the objection was overruled, and a separate trial ordered. The counsel for defendant Babcock excepted.

The offense for which the defendants were indicted is a felony. 3 Revised Statutes (5th ed.), 956, section 55, and by section 22 of same volume, 1028, it is provided that when two or more defendants shall be jointly indicted *for any felony*, any one defendant requiring it shall be tried separately. Merville had the absolute right to a separate trial, and it could not be refused him. It would have been a ground for refusal, if the court had any discretion in the premises, that the demand came too late. (Wharton's Criminal Law, § 433.) But the court yielded to the requirements of the statute, and we must presume that the proceedings subsequent to the granting the separate trial were in conformity to law. If it appeared that the jury or the witness was not again sworn, the one to try and the other to give evidence, in the case of *The People* v. *Babcock*, a new trial should be granted. To swear the jury and witnesses in a case against two defendants, when only one was on trial, is a mis-trial, and a new trial should follow.

The exception to the question by the prosecution to Haskell, whether his conversation with Merville was on the same subject that the one with Babcock was, was a valid one; but the question does not seem to have been answered, and therefore the defendants sustained no injury. The witness related a conversation between himself and Merville, after the objection just considered was overruled, and he may have done so in answer to the question objected to; but it was not responsive to the question

that called for the answer yes or no, and not for the detail of the conversation. The evidence given was not objected to. An exception was taken by defendant's counsel to the admission of a conversation between Haskell and Dr. Boddy in relation to a note. The witness in his answer does not allude to a note; and if it was incompetent to give evidence in regard to a note, no wrong was done to the defendant, as a note was not spoken of by him in answer to the question objected to.

Dr. Crane was examined in behalf of the people, and was asked by the district attorney whether he had an interview with defendant, at a time named, when he came for medicine. The defendant's counsel objected to the evidence, on the ground that it was a confidential communication to a professional man. The objection was overruled, and the witness answered that he did. The question was competent, as it did not call for any communication made by defendant to the doctor. It was asked to ascertain whether the witness had an interview with defendant when he wanted medicine.

The defendant then objected to all the interview and to all the conversation then had. The witness proceeded to state the conversation, and in it he said defendant told the doctor he wanted medicine for Jennie, who had taken cold and was suffering from suppressed menses, and that subsequently, in about a month, the medicine was returned, and defendant told the doctor that the medicine was for his wife, and was not given because she was pregnant. Section 104, of 3 Revised Statutes, (5th ed.) 690, only prohibits physicians and surgeons from disclosing information acquired in attending any patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician or do any act for him as a surgeon. The physician was not excused from testifying. The defendant was not consulting him for himself, nor does it appear that he was representing any one else who needed or desired medical assistance. (*Hewit* v. *Prime*, 21 Wend., 79.) Haskell was at defendant's with Merville, and left and went to his house, and defendant followed him at request of Merville. Merville told defendant that Haskell left word to be sent for, if he (Merville) concluded to go home that night. The defendant then offered to show all that was said by Merville on the subject of going to

Haskell's. The district attorney objected to the evidence, and it was excluded, and defendant's counsel excepted. The evidence was clearly incompetent, and was therefore properly excluded.

The question to defendant, whether he stated anything to Haskell that "you believed or knew to be false," was improperly excluded. When a fraudulent intent is imputed to a person, or forms an element of a crime with which he is charged, he may deny the fraudulent intent, whether the effect is to defeat a cause of action or lessen the damages or punishment which may be inflicted. In this case a fraudulent intent was imputed to the defendant, and he had the right to repel it by his testimony. (*Seymour* v. *Wilson*, 4 Kern., 567; *McKown* v. *Hunter*, 30 N. Y., 628, and cases cited. The defendant's counsel offered Merville, his co-defendant, as a witness in behalf of Babcock. The district attorney objected to his competency, being a co-defendant. The objection was sustained, and the witness excluded.

When the cause was tried (January 14, 1876), a person jointly indicted with another was not a competent witness for such other. (*Patterson* v. *The People*, 46 Barb., 625; *Taylor* v. *The People*, 12 Hun, 212.) The passage, on the 27th April, 1876, of a statute making a co-defendant a competent witness for the other, does not relate back and render the decision erroneous. The court has no power to order a new trial merely to enable the co-defendant to be examined.

I have thus considered all the points discussed by the relator's counsel, and am of the opinion that the court below erred in regard to but one of them ; and by reason of that error the conviction must be reversed, and a new trial granted in the Allegany Sessions, to which the proceedings are remitted, with directions to proceed and retry said cause.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Conviction reversed and new trial granted in the Allegany County Sessions, to which the proceedings are remitted, with directions to retry prisoner.